SAUNDERS, Judge.
The factual background of this controversy is not in dispute. Mr. Robert Morrow and Mrs. Julie Landreneau were married in Opel-ousas, Louisiana, on June 26, 1982. Of this marriage two children were born, Ashley, bom December 12, 1984, and Robert, Jr., bom June 27, 1989.
The parents were divorced by judgment rendered July 6, 1995, in the Tenth Judicial District Court, Natchitoches Parish. The parents had entered into a “Joint Custody Implementation Plan” establishing the joint custody of the children, with Julie designated as domiciliary parent in St. Landry Parish. The plan further ^stipulated that either party’s remarriage or move beyond Natchitoch-es, St. Landry, or Lafayette Parishes would constitute a change warranting a formal motion to alter the terms of the agreement.
This dispute arose following Julie’s seemingly imminent move to Virginia to marry a reputable gentleman there. In accordance with the plan, Julie filed a rule in St. Landry Parish to have her move to Virginia approved.
Upon learning of her likely move, Robert filed the instant proceedings in Natchitoches Parish to have himself named as primary domiciliary parent. His rale, filed May 6, 1997, alleged that circumstances had changed to such a degree that it is now in the best interest of the minor children that he become the primary domiciliary parent. The principal changes in circumstances he referred to was the mother’s then apparent plan to move to Virginia, his improved financial position, and his construction of a home in Natchitoch-es large enough to house his children. Robert’s position is that his increased stability would be good for the children, particularly in comparison to the instability they would have to face should their mother, in fact, move to Virginia.
Following trial, by ruling of July 18, 1997, the trial court in Natchitoches Parish found that the best interest would not be served by permitting the children to move with their mother to Virginia, a move which has not taken place and which the mother has since disavowed.
For the following reasons, we reverse the judgment of the trial court.

OPINION

On appeal, the question with which we are presented is whether the trial court erred in upsetting the prior arrangement by which the children were principally | ¡¡housed with their mother in St. Landry Parish, with reasonable rights of visitation allotted to the father.
The more narrow legal questions are whether the mother’s once intended move and Robert’s improved lot in life combined to produce a change in circumstances warranting a change in the parents’ prior custodial arrangements. For the following reasons, we answer each question in the negative and, on that basis, are compelled to reverse the judgment of the trial court.

Julie’s Aborted Move

As to the former issue, Julie’s contemplated move, the uncontradicted facts are that the mother has not moved and that the children are faring well in their present situation. Under these circumstances, we cannot say that Julie’s potential move has produced a legally recognizable change in circumstances. See Hensgens v. Hensgens, 94-1200 (La.App. 3 Cir. 3/15/95); 653 So.2d 48, wherein we noted that anticipated facts generally will not support a finding of a change in circumstances, at least where the parent’s good faith is not at issue.
*723 In so holding, we do not say, nor do we mean to suggest, that were Julie to move out-of-state, such a move would not constitute a change in circumstances which would permit a trial court to reopen the custody question; in all likelihood, it would. See, e.g., Myers v. Myers, 561 So.2d 875 (La.App. 2 Cir.1990). Rather, our conclusion with respect to the first legal issue is simply based upon the facts that no change in circumstances has occurred, since Julie has not moved,' and the children are faring well under the present arrangement.[1]
| ¿Robert's Improved Ability to Provide
Robert argues that his improved financial circumstances and larger home justifies a change in the prior custody arrangement. We cannot agree, for although both attributes undoubtedly enhance Robert’s ability to care for the couple’s children, they do not in and of themselves, warrant a change in custody where a domiciliary parent has offered her children a wholesome environment in which to live.
The fact that one parent is better off financially and can provide a better home and a larger degree of material benefits is not a factor for consideration where the other home is adequate. Peters v. Peters, 449 So.2d 1372 (La.App. 2d Cir.1984). Moreover, the non-domiciliary parent has the obligation to provide a level of support equal to that available if the child were housed in the residence of the non-domiciliary parent. Ducote v. Ducote, 339 So.2d 835 (La.1976); Wilmot v. Wilmot, 223 La. 221, 65 So.2d 321 (1953); Culpepper v. Culpepper, 514 So.2d 701 (La.App. 2d Cir.1987); Sims v. Sims, 457 So.2d 163 (La.App. 2d Cir.1984).
Bailey v. Bailey, 527 So.2d 1030, 1033 (La.App. 2 Cir.1988).
Moreover, undergirding our opinion is a far greater reason. It is this Court’s profound interest in the well-being of the couple’s children, both of whom could be adversely affected by a change for less than compelling reasons.
The child has at stake an interest of transcending value in a custody modification suit — his best interest and welfare— which may be irreparably damaged not only by a mistaken change in custody but also by the effects of an attempted or threatened change of custody on grounds that are less than imperative. The consequences to the mental and emotional well being and future development of the child from an erroneous judgment, unjustified litigation, threat of litigation, or continued interparental conflict are usually more serious than similar consequences in an ordinary civil case.
Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La.1986).
In this case, there are no imperative grounds demanding a change in custody. To the contrary, because the evidence suggests that the children have been doing well under the initial arrangement, the law and public policy prohibit such a change.

J¿DECREE

For the foregoing reasons, the judgment of the trial court is reversed, without prejudice to either party should a change in circumstances occur. Each party shall bear their own costs.
REVERSED AND RENDERED.

. Additionally, although not the determining sole factor here, on policy grounds we see no reason to prejudice the mother for her good faith efforts to comply with the agreement by notifying authorities in advance of her move.