CHEHARDY, Chief Judge.
This appeal arises from a judgment in favor of plaintiff, Isabel Anglade Toups, and against defendant, Franklin D. Toups, for increased child support. The sole jpsue is whether the evidence supported an increase in child support for one minor child from $400 to $1,600 per month.
In 1981, defendant was ordered to pay child support for three children in the amount of $400 for each child. Two of the children, Victoria and Michael, suffer from physical and mental handicaps. Since that time, two of the children, David and Victoria, reached their majority and defendant’s obligation was reduced to $400 per month.
On March 24, 1986, plaintiff filed a petition to increase the child support for Michael, now 12 years old, alleging increases in expenses for his care and increases in defendant’s income. Trial of the matter was held on May 28 and May 29, 1986, following which judgment was rendered in plaintiff's favor.
On appeal, defendant complains that the expenses claimed by plaintiff are either excessive or not substantiated by the evidence. Defendant also contends the trial judge erred in considering the conversion or liquidation of pre-existing stocks as a change per se, and in further considering the separate assets of his second spouse and her children. Finally, defendant asserts the trial court should have given consideration to the minor child’s ownership in stocks in determining the needs of the child.
*175 The law in Louisiana regulating parental obligations provides that both parents owe the obligation of support to their children. LSA-C.C. art. 227. A judgment awarding child support is subject to modification at any time, but the party seeking the change must show a change in circumstance in the needs of the person requiring it as compared to the circumstances of the person obligated to pay. LSA-C.C. art. 231; Duhe v. Duhe, 466 So.2d 595 (La.App. 5 Cir.1985). However a noncustodial parent will not be relieved of his primary obligation to support his children because of an unstable financial condition brought about by himself. Duhe v. Duhe, id; Ledet v. Ledet, 416 So.2d 1309 (La.App. 1 Cir.1982); Dugas v. Dugas, 374 So.2d 1278 (La.App. 3 Cir.1979).
In deciding whether a modification is warranted, the court is not restricted to consideration of free income, but must consider the totality of the circumstances. Kuhn v. Kuhn, 420 So.2d 1026 (La.App. 5 Cir.1982). Included among the factors to be considered in apportioning the custodial spouse’s obligation are the customary duties performed and services rendered by that spouse on a daily basis. Kuhn v. Kuhn, id; Duhe v. Duhe, supra. As to whether or not the law allows the assets of the child to be considered, there is jurisprudence to the effect that a natural obligation of the father ceases after dissolution of the marriage, if his children have property from which sufficient income may be derived to provide for their subsistence and education. Succession of Fontano, 196 La. 775, 200 So. 142 (1941). Whether that principle applies to deciding if a change of circumstance has occurred has not been specifically addressed by the courts. In recent years when the issue was raised in a proceeding for modification, the substantive issue was pretermitted and the Fonta-no case was held inapplicable because the parent failed to prove a change of circumstance related to the child’s property. See: Bradford v. Bradford, 393 So.2d 181 (La. App. 1 Cir.1980), and Hendrick v. Hendrick, 470 So.2d 449 (La.App. 1 Cir.1985).
The facts in this case show plaintiff first obtained a judgment for child support in 1981. Since then, two of the children reached their majority reducing the award from $1,200 per month to $400 per month. She had not sought an increase until filing the present action. Both of the older children still reside with plaintiff and she receives no financial support for the older handicapped child. To support her petition for an increase, plaintiff alleges a change in circumstance for Michael’s speech therapy, private school, summer camp and medical costs, as well as the increased cash flow of the father. Plaintiff, a real estate agent, introduced into evidence her expense sheet, a tuition plan for Crescent Academy, a statement of account from Jefferson Speech and Language Center, defendant’s Internal Revenue Service reports from 1981 to 1985, a list of stocks owned by defendant and a bank statement from Commercial Bank. On her expense sheet she lists her monthly income as $3,325.23 and her separate expenses as $5,204.17. The expenses listed for Michael totaled $2,323.73. Her assets totaled $240,750, including stocks, cash, savings, a note and real estate. Plaintiff’s liabilities totaled $162,000, including three mortgages, a car note and a loan made on behalf of the older handicapped child.
The testimony reveals that plaintiff’s income and assets remain basically the same since the award in 1981. The exception is a sale of stock for $24,000 in 1986 which was totally expended on the family expenses, including $3,000 for medical expenses for the older handicapped child.
In regard to the minor child, plaintiff testified that Michael suffers from a learning disability and has an I.Q. of approximately 80. He also suffers from epilepsy and other related medical and psychological problems. She explained that Michael had been attending public school, but upon reaching the age of 12 was no longer able to remain in the public school system. On the advice of the professionals involved with Michael, plaintiff enrolled him in Crescent Academy. The tuition at the school is $391.66 per month. Because of his handicap, plaintiff testified Michael also requires *176 a baby sitter two days a week so that she can work, at a cost of $200 per month.
While she admitted her medical insurance pays for some of Michael’s treatment, she noted her deductible is $1,000, and further stated the insurance does not cover his neurological testing. She testified that she incurs a weekly expense of $75 for treatment by a psychologist and/or psychiatrist, and an average monthly expense of $112 for speech therapy. Excluding pediatric expenses or drugs (both of which Michael receives free from his physician godfather and defendant), Michael’s monthly medical costs averaged $331 for the first five months of 1986.
Plaintiff testified that Michael’s attendance at summer camp is a necessity because he requires continued mental stimulation to prevent regression. She stated those costs for camp have increased to $600. On cross-examination, she explained the particular camp was also chosen by the child’s psychologist and social worker.
In reviewing defendant’s circumstances, the record reflects the defendant is a practicing physician who operates his office four days a week. His medical specialties are general surgery and general medicine. However, the testimony shows he is unable to practice surgery since he cannot obtain medical malpractice insurance due to numerous claims. For the years 1980 to 1985, he was placed on probation by the Louisiana Board of Medical Examiners for his conduct in an unrelated matter. In 1983 he remarried and resides with his second wife and her two children.
Defendant contends his income has not increased since the 1981 award. His tax returns for 1981 show a total income of $32,817.66 and a business income of $54,-024. In 1985 he reported his total income as $53,941.10 and his business income of $56,720. Deducting his business expenses, he claims his annual net income to be $10,-500 per year or approximately $1,300 per month, including dividends from stock. He stated he expected that amount to increase 5% to 10% in 1986. In 1981, defendant’s income was just under $1,000 per month.
The expense sheet submitted by defendant reflects assets of $260,000 and $67,000 in liabilities. His joint living expenses were listed as $3,904, or $1,952 for his portion. He owns two automobiles and his wife owns one. In 1986 he purchased 3½ race horses, the upkeep for which he expends $800 per month.
Defendant’s tax return for 1985 shows a net long-term capital gain of $96,576 from the sale of stock. Although he insisted at trial that $19,000 of that amount belongs to his wife, the tax form shows the stock was purchased prior to his remarriage. He continues to retain shares of stock in various companies.
Defendant also has several bank accounts which total $96,768.50 accruing 7% to 7½% interest. That amount does not include one-half of a $12,000 savings account attributable to his wife, nor does it include $15,000 in an account belonging to her.
In analyzing his tax returns, he admitted that $5,404.04, imputable to depreciation on his business income state, was not an actual out-of-pocket loss, and that $60,000 of the capital gains were not reflected in his total income.
In 1986, defendant purchased three race horses and an interest in another for $14,-000. In explaining this expenditure, defendant stated he suffered an aneurysm in 1983, at which time he was not insured. The illness caused him to become uninsura-ble. He testified that by purchasing a race horse he became automatically eligible for medical insurance through the Breeder’s Association. Defendant noted he was still paying the medical bills incurred for that illness. However, he admitted he could retain the medical insurance if he only owned one horse. He further stated one of the horses had already won money in 1986 and he expected the others to do so in the future. He did not state how much money he received from the winnings, if any.
Both parties testified in regard to Michael’s assets which are comprised of shares of stock. Plaintiff testified the stock was purchased prior to the 1981 judgment and was given to Michael, along with *177 shares given to the other children. She also pointed out that Michael’s ability to support himself in the future will be limited by his handicaps. Thus, the dividends accruing from the assets are automatically reinvested for his future needs.
The trial court is accorded much discretion in awarding or modifying child support. Kuhn v. Kuhn, supra; Duhe v. Duhe, supra. Such awards will not be disturbed absent a clear abuse of discretion. Kuhn v. Kuhn, supra.
In analyzing the evidence in this case, the trial court found that plaintiffs expenses have increased dramatically in the six years since the original award. After our review we do not find those expenses either excessive or unsubstantiated considering Michael’s physicial and mental handicaps.
As to Michael’s assets, the evidence clearly shows the stocks were obtained pri- or to the original judgment and thus do not represent a change in circumstances. Bradford v. Bradford, supra; Hendrick v. Hendrick, supra. Further, even were we to view the dividends as increased assets, we find no rational reason for the trial judge to have included them in his consideration in light of the age of the child, his physical and mental problems, and defendant’s financial circumstances.
As to defendant’s circumstances, we note that the trial judge expressed skepticism regarding defendant’s contention that his income had not increased. Whether or not that belief was justified, defendant’s free income is not the only factor to be considered. Kuhn v. Kuhn, supra. In analyzing the other factors, i.e. his assets and lifestyle, along with Michael’s needs, we find the trial court did not abuse its discretion in ordering an increase. We do, however, find that the increase from $400 to $1,600 ordered by the trial judge is excessive under the facts. Consequently we reduce the award to $1,000.
Finally, in deciding whether the trial court erred in apportioning the greater burden of the increased expenses to defendant, the trial judge properly considered the fact that plaintiff provides services on a daily basis for Michael not usually encountered with a normal child. Furthermore, the fact that she bears the sole financial responsibility for the other handicapped child decreases her financial ability to pay a larger portion of her obligation to the minor. Thus, we find no abuse of discretion in this regard.
Accordingly, the judgment of the trial court is hereby amended to order defendant, Franklin D. Toups, to pay plaintiff, Isabel Anglade Toups, $1,000 per month child support. In all other respects, the judgment is affirmed. Costs of appeal are to be paid by appellant.
AMENDED IN PART AND AFFIRMED AS AMENDED.